**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ELYSIA C.,

                                            Plaintiff,

              v.
                                                            No. 1:19-CV-1632
COMMISSIONER OF SOCIAL SECURITY,                            (CFH)

                                            Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Law Offices of Steven R. Dolson<br>126 North Salina Street, Suite 3B<br>Syracuse, New York, 13202<br>Attorney for plaintiff | STEVEN R. DOLSON, ESQ |
| Social Security Administration<br>J.F.K. Federal Building<br>15 New Sudbury Street, Room 625<br>Boston, Massachusetts 02203<br>Attorney for defendant | LISA SMOLLER, ESQ. |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff Elysia C.[2] brings this action pursuant to 43 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying her application for disability insurance benefits.  See Dkt. No. 1 ("Compl.").

---

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. §
636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 7.

[2]  In accordance with guidance from the Committee on Court Administration and Case Management of
the Judicial Conference of the United States, which was adopted by the Northern District of New York in
2018 to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff by first name and last initial.

Plaintiff moves for reversal and remand for further administrative proceedings, and the Commissioner cross moves for a judgment on the pleadings.  See Dkt. Nos. 9, 11.  For the following reasons, the Commissioner's determination is affirmed.

## I. Background

On June 3, 2016, plaintiff protectively filed a Title II application for disability insurance benefits alleging a disability onset date of May 1, 2016.  See T. at 19.[3] October 5, 2016, the Social Security Administration denied plaintiff's application.  See id. at 84-88.  Plaintiff requested a hearing, see id. at 91-93, and a hearing was held on July 26, 2018, in Albany, New York, before Administrative Law Judge ("ALJ") A. Patane. See id. at 57-71.  On October 18, 2018, the ALJ issued an unfavorable decision.  See id. at 12-21.  On November 1, 2019, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner.  See id. at 1-3.  Plaintiff commenced this action on December 30, 2019.  See Compl.

## II. Applicable Law

### A. Scope of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 8.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude otherwise*."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a

4

> claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had not engaged in substantial gainful activity since May 1, 2016, the alleged disability onset date.  See T. at 17.  At step two, the ALJ found that plaintiff had the following severe impairments: "multiple sclerosis and obesity."  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See id.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to "perform sedentary work

as defined in 20 CFR 404.1567(a) except she can frequently perform gross and fine manipulations." Id. at 18.  At step four, the ALJ determined that plaintiff could not perform any past relevant work.  See id. at 20.  At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  See id.  Thus, the ALJ determined that plaintiff had not been under a disability, as defined in the Social Security Act, since the alleged disability onset date.  See id. at 21.

## IV. Relevant Medical Opinion Evidence

### 1. Dr. Allen Gerber, M.D.

On March 20, 2018, Dr. Allen Gerber, M.D. ("Dr. Gerber"), plaintiff's treating neurologist, authored a physical RFC assessment.  See T. at 972-79.  Dr. Gerber's physical RFC assessment consisted of a check-box questionnaire that included options for answering questions relating to plaintiff's exertional, postural, manipulative, visual, communicative, and environmental limitations.  See id. at 973-76.  On the check-box form, "frequently" is defined as "occurring one-third or two-thirds of an 8-hour workday (cumulative, not continuous)," and "occasionally" is defined as "occurring from very little up to one-third of an 8-hour workday (cumulative, not continuous)." Id. at 972.  With respect to plaintiff's exertional limitations, Dr. Gerber indicated in response to items one through five of the check-box form that plaintiff could occasionally lift and/or carry 20 lbs. and frequently lift and/or carry less than 10 lbs.; stand and/or walk less than 2 hours in an eight-hour workday, and that plaintiff would be required to periodically alternate between sitting and standing to relieve pain or discomfort; and that plaintiff's ability to

push or pull, including her ability to operate hand and/or foot controls, was limited in her upper extremities.  See id. at 973.  Dr. Gerber did not provide additional comments under the question number six, which stated, "[e]xplain how and why the evidence supports your conclusion in item 1 through 5.  Cite specific facts upon which your conclusions are based."  Id.  Concerning plaintiff's postural limitations, Dr. Gerber indicated that plaintiff could frequently balance; occasionally climb ramps/stairs, stoop, kneel, and crouch; but never climb ladders, ropes, or scaffolds, or crawl.  See id. at 974.

Further, Dr. Gerber provided check-box opinions regarding plaintiff's manipulative limitations, including that plaintiff had "LIMITED" ability to "finger[]" (i.e. engage in fine manipulation) and "[f]eeling (skin receptors)"; and "UNLIMITED" ability to reach in all directions, including overhead, and to handle (i.e. engage in gross manipulation).  T. at 975.  Dr. Gerber also provided the following hand-written description in relation to plaintiff's manipulative ability: "constantly burning self [sic] cannot feel how 'hot' things are."  Id.  Dr. Gerber opined that plaintiff had "UNLIMITED" visual and hearing abilities, id. at 975, 976, but "LIMITED" speaking ability.  Id. at 976.  Dr. Gerber explained that, "when tired feels [sic] like tongue gets heavy, and has difficulty with word find."  Id.  Moreover, concerning environmental limitations, Dr. Gerber opined that plaintiff should "avoid concentrated exposure" to "noise"; "avoid even moderate exposure" to "extreme heat," "humidity," and "hazards (machinery, heights, etc.)"; and that plaintiff had no limitations with respect to exposure to "extreme cold," "wetness," "vibration," or "fumes, odors, dusts, gases, poor ventilation, etc."  Id. (capitalization omitted).  Dr. Gerber explained that plaintiff should "avoid concentrated exposure [sic] machines (due to feeling in hands) and balance off [sic] has vertigo."  Id.

7

Finally, in response to "[a]dditional [q]uestions provided by" plaintiff's counsel, Dr. Gerber checked option 2, indicating that, "[i]f [plaintiff] were to return to full time employment," she "would miss three days or more from employment each month due to . . . her symptoms."  Id. at 979.

## V. The Parties' Arguments

Plaintiff first avers that the ALJ committed reversable error by failing to "explicitly consider the factors outlined in 20 C.F.R. § 404.1527(c)" in reaching his decision to afford less than full weight Dr. Gerber's opinion in violation of the treating physician rule. See Dkt. No. 9 at 6.  Plaintiff asserts that the Commissioner may not rely on the Second Circuit's unpublished decision in Atwater v. Astrue (512 F. App'x 67 (2d Cir. 2013)), or prior case law from this District, for the proposition that the ALJ's failure to explicitly consider each factor under 20 C.F.R. § 404.1527(c) constituted only harmless procedural so long as "the ALJ's reasoning and adherence to the regulation are clear." Id. at 70; see Dkt. No. 9 at 7.  Relying on Ramos v. Berryhill (No. 3:15-CV-1368 (MPS), 2017 WL 838091 (D. Conn. Mar. 3, 2017)), plaintiff contends that the Second Circuit's decisions in Greek v. Colvin (802 F.3d 370 (2d Cir. 2015)) and Estrella v. Berryhill (925 F.3d 90 (2d Cir. 2019)) "change the analysis" set forth in Atwater and require remand where an ALJ fails to explicitly address all of the Section 404.1527(c) factors.  See Dkt. No. 9 at 8-9.  Alternatively, plaintiff contends, "a searching review of the record in this matter does not make it abundantly clear that the treating physician rule was not traversed[,] and remand is necessary."  Dkt. No. 9 at 8 (citing Estrella, 925 F.3d at 90) (additional citation omitted).  Plaintiff urges that "the [ALJ] fail[ed] to adequately discuss

how [Dr. Geber's] opinions are not well supported by medically acceptable clinical laboratory diagnostic technique, particularly with multiple MRI reports of both the brain and cervical spine."  Id. at 6.

The Commissioner opposes plaintiff's argument, contending that the rule set forth in Atwater was not modified by the Second Circuit's rulings in Estrella or Greek and, in any event, a searching review of the record in this case establishes that the ALJ did not traverse the substance of the treating physician rule.  See Dkt. No. 11 at 9.  In particular, the Commissioner contends that the portions of Dr. Gerber's opinion that the ALJ declined to afford weight are inconsistent with other record evidence, including his own treatment notes.  See id. at 10-13.

## VI. Analysis[4]

### A. Appropriate Standard of Review Under Estrella

In evaluating medical opinions on issues that are reserved to the Commissioner, such as RFC, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered.  See Drysdale v. Colvin, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citations omitted).  The Second Circuit has long recognized the "treating physician rule" set forth in 20 C.F.R. § 416.927(c), which provides that "'the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

---

[4]  The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF at the headers of the page, not to the pagination of the individual documents.

inconsistent with the other substantial evidence in the case record.'"  <u>Greek</u>, 802 F.3d at 375 (quoting <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008)); <u>see</u> <u>Halloran v. Barnhart</u>, 362 F.3.d 28, 32 (2d Cir. 2004) ("[T]he opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . .").

Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons."  <u>Schaal v. Apfel</u>, 134 F.3d 496, 503, 505 (2d Cir. 1998); <u>see</u> 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ does not give a treating physician's opinion controlling weight, the Social Security Administration "regulations require the ALJ to consider several factors in determining how much weight the opinion should receive."  <u>Greek</u>, 802 F.3d 370, 375 (citing 20 C.F.R. § 404.1527(c)(2)(i), (2)(ii), (3)-(6)). In <u>Estrella</u>, a 2019 case, the Second Circuit addressed an ALJ's failure to "explicitly" apply the "nonexclusive list" of regulatory factors set forth in <u>Burgess</u> when assigning less than full weight to a treating physician's opinion.  <u>Estrella</u>, 925 F.3d at 95.  There, the Second Circuit made clear that, "[a]n ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error," <u>Id.</u> at 96 (quoting <u>Selian v. Astrue</u>, 708 F.3d 409, 419-20 (2d Cir. 2013) (per curium)), and that remand is appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]'"  <u>Id.</u> (quoting <u>Halloran</u>, 362 F.3d at 32).  The Court further clarified, "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' [the court] will affirm."  <u>Id.</u> (quoting <u>Halloran</u>, 362 F.3d at 32).  The Court explained that, where an ALJ procedurally errs by failing to "explicitly consider" the <u>Burgess</u> factors, the question of "whether 'a searching

review of the record . . . assure[s the court] that the substance of the [treating physician]

rule was not traversed'" is resolved by determining "whether the record otherwise

provides 'good reasons' for assigning 'little weight' to [the treating physician's] opinion."

Id.  As recently as 2020, the Second Circuit in Ferraro v. Saul (806 F. App'x 13 (2d Cir.

2020) (summary order)), quoting verbatim from Estrella, reiterated the foregoing

rationale.  See Ferraro, 806 F. App'x at 14-15.

Based on the foregoing, the Court rejects plaintiff's contention that an ALJ's

failure to explicitly include discussion of the Burgess factors in rendering a Social

Security disability determination constitutes per se grounds for remand.  See Dkt. No. 9

at 6-9.  Contrary to plaintiff's assertions to the contrary, it is well established in this

circuit that an "ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning

weight . . . is a procedural error," Estrella, 925 F.3d  at 96 (quoting Selian v. Astrue, 708

F.3d 409, 419-20 (2d Cir. 2013) (per curium)), and that remand is appropriate, unless

"'a searching review of the record' assures [the Court] 'that the substance of the treating

physician rule was not traversed'—*i.e.*, whether the record otherwise provides 'good

reasons' for assigning" less than full weight to the treating physician's opinion  Id.

(quoting Halloran, 362 F.3d at 32).  In any event, the authority plaintiff cites in support of

her assertion in this regard—an unreported case from the District of Connecticut—relies

on an unjustifiably narrow interpretation of Greek that is not supported by the above-

cited rational set forth in Estrella—controlling authority in this circuit.  See Ramos, 2017

WL 838091, at *6.  Consequently, as the ALJ did not explicitly consider the Burgess

factors in rendering his decision in this matter, he committed procedural error.  See

Estrella, 925 F.3d at 95-96.  Therefore, the analysis must proceed to determine whether

11

a searching review of the record establishes that the ALJ did not traverse the treating physician rule.  See id.

### B. The ALJ Properly Afforded Partial Weight to Dr. Gerber's Opinion

In affording partial weight to Dr. Gerber's opinion, the ALJ observed that Dr. Geber "overstates the degree of limitation."  T. at 19.  In particular, the ALJ concluded that "Dr. Gerber . . . support[ed] his finding of limited functioning in certain areas, such as manipulation, by noting exactly how and why [plaintiff] is limited in these areas.  As such, these portions of the opinion are well supported."  Id.  "However," the ALJ concluded, "other areas of [Dr. Gerber's] opinion," such as plaintiff's ability to stand or walk less than two hours in an eight-hour workday, "do not contain the same degree of support, and thus these portions of the opinion are not well supported.  Overall, Dr. Gerber's opinion provides some foundation to understanding" plaintiff's RFC.  Id. at 19-20.  As an initial matter, the Court notes that vagueness or lack of specificity in a treating physician's opinion, alone, is not a sufficient basis upon which to afford a treating physician's opinion less than controlling weight.  See Collins v. Berryhill, No. 17-CV-00467 (LJV), 2019 WL 2287787, at *4 (W.D.N.Y. May 28, 2019) ("[T]he fact that a physician left her opinion unexplained on a form does not mean that it is not 'well supported by medically acceptable clinical and laboratory diagnostic techniques and thus not entitled to controlling weight.'" (quoting 20 C.F.R. § 404.1527(c)(2)).  Nevertheless, a "searching review of the record . . . assures [the Court] . . . that the substance of the [treating physician] rule was not traversed" in this case, as "the record

otherwise provides 'good reasons' for assigning" Dr. Gerber's opinion "partial weight."

Estrella, 925 F.3d at 96 (quoting Halloran, 362 F.3d at 32); T. at 19.

### 1. Plaintiff's Exertional Limits

"An exertional limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling)." Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999) (citations omitted); see 20 C.F.R. § 404.1569a(b)). Here, the ALJ stated that plaintiff's medical records and Dr. Gerber's opinion indicated that plaintiff experienced "fatigue" and "numbness in her hands and feet, along with left arm spasms," which the ALJ determined would "account for her exertional limitations." T. at 19, 20. However, as discussed below, the medical evidence of record establishes that, at most, these symptoms were minor and unsupported by the limitations expressed in Dr. Gerber's physical RFC assessment. As the ALJ noted, Dr. Gerber's February 2, 2017 treatment note observed that plaintiff complained of "numbness and tingling in her hands and feet" and that "[s]he has spasms of her left arm more in the forearm and that clenches in contracture fingers more on the ulna side involving fingers 4 and 5, which is new for her." Id. at 569. As the ALJ specifically pointed out, see id., plaintiff's AMC Discharge Summary indicated, as relevant here, "[o]f note, the patient does not have any motor deficit. The only neurological deficit she has is left facial paresthesia," "secondary to multiple sclerosis." Id. at 256. Moreover, plaintiff's June 17, 2016 nursing triage note from AMC indicated that plaintiff's facial numbness had worsened since her last visit, but that she

experienced "[n]o extremity numbness or weakness." Id. at 852.  Plaintiff's treatment note from July 25, 2017, indicated that she experienced "some minor symptoms that last about a day or so, but then . . . revert back to normal with warmth in her legs that happened once, that lasted a day, and some tingling in her hands, that lasted a day, but then reverted back to normal . . .," and that plaintiff "is active" and "is stretching 3 to 4 times per day before she does her exercises, which seems to help a great deal with spasticity."  Id. at 668 (emphasis added).

Further, plaintiff's St. Mary's medical records from May 12, June 7, August 10, and October 21, 2016 also indicated that plaintiff "[w]alks with well-balanced gait; had "intact" "[m]otor strength" in her upper extremities; strength in her lower extremities was "5/5 bilaterally"; and had "[f]ull ROM" in both her upper and lower extremities.  T. at 351, 355, 358, 361.  Moreover, plaintiff's St. Mary's records from May 12, June 7, August 10, and October 21, 2016 stated that her "[b]iceps reflexes[,]" "[b]ranchioradialis reflexes[,]" "[a]chilles reflexes[,]" and "[m]edial hamstring reflexes" "[we]re normal and symmetric bilaterally."  Id.  In addition, the May 12, 2016 St. Mary's notes indicate that plaintiff has "[g]ood mobility of all extremities" and a negative Romberg's test.[5]  Id. at 351.  In addition, Dr. Gerber's February 2, 2017 treatment note indicated that plaintiff "denie[d] difficulty with fatigue . . . [or] difficulty with speech [or] strength balance," and explained that she experienced dizziness about 2 to 3 times a day that lasts for about 30 second," sometimes "when she is walking," id. at 569, and his treatment note from March 30,

---

[5]  "The Romberg test is used for the clinical assessment of patients with disequilibrium or ataxia from sensory and motor disorders." Romberg Test, Physiopedia, https://www.physio-pedia.com/Romberg_Test (last visited Feb. 16, 2020); Chambers v. Comm'r of Soc. Sec., No. 19 CIV. 2145 (RWL), 2020 WL 5628052, at *4 n.9 (S.D.N.Y. Sept. 21, 2020) ("A Romberg test is given to diagnose sensory imbalance or gait disturbances." (citations omitted)).

2018, made no mention whatsoever of fatigue, dizziness/vertigo, or speech issues.  See id. at 983.  Plaintiff's St. Mary's records from May 12, June 7, August 10, and October 21, 2016 corroborate the foregoing, as they indicate that plaintiff was "[a]lert and oriented x3"; had "normal" mood and affect; that her "[s]peech [wa]s articulate and language [wa]s fluent."  Id. at 351, 355, 358, 361.

The ALJ also cited to plaintiff's May 2013 St. Mary's "[h]ospital records[, which] showed that [she] had normal motor activity and good mobility in all extremities with a normal straight leg raise."  T. at 18; see id. 329, 332 (May 2013 St. Mary's records noting plaintiff's normal motor activity and that her "straight leg raise [wa]s essentially negative.").  The Court notes that, in this regard, the ALJ cited medical records from 2013, which predated the alleged onset date.  See id.; McKern v. Comm'r, No. 17-CV-944 (HBS), 2019 WL 289881, at *3 (W.D.N.Y. Jan. 23, 2019) ("Ordinarily, medical evidence that predates the claimed onset date is not relevant to evaluation of claimant's disability." (citations omitted)).  However, the ALJ did not rely solely on evidence preceding the alleged onset date in this regard, as he also cited the opinion of Dr. Prezio, the state consultative medical examiner, in support of the foregoing observations, which indicated that plaintiff's straight leg raise test was "negative bilaterally"; that plaintiff's deep tendon reflexes ("DTRs") were "physiologic and equal in upper and lower extremities," that plaintiff had "[n]o sensory deficit," and "[s]trength 5/5 in the upper and lower extremities."  T. at 317.  Further, Dr. Dr. Prezio noted that plaintiff had "[n]o cyanosis, clubbing, or edema," that her "[p]ulses [were] physiologic and equal," that she had "[n]o significant varicosities or trophic changes[,]" and that "[n]o muscle atrophy [was] evident."  Id.  Moreover, Dr. Prezio noted that plaintiff "appeared

to be in no acute distress," had normal gait, could walk on her heels and toes without difficulty, and perform a full squat.  See id. at 316.  Dr. Prezio indicated that plaintiff had a normal stance, did not use an assistive device, and did not require help getting on or off the exam table or in and out of a chair.  See id.  Dr. Prezio also stated that plaintiff had "full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally" in her cervical and lumbar spine.  Id. at 317.  In addition, Dr. Prezio opined that plaintiff had "[g]rip strength 5/5 bilaterally."  Id.

Next, plaintiff's contention that the ALJ improperly weighed Dr. Gerber's opinion insofar as it is supported by her MRI reports is unpersuasive.  Although, as the ALJ noted, plaintiff has complained of back pain since 2009, MRIs taken in March 2017, at Dr. Gerber's request indicated that plaintiff's thoracic and cervical spines had maintained alignment, preserved vertebral body heights, and did not show any significant stenosis.  See id. at 511.  As defendants correctly point out the MRI results showing abnormalities in plaintiff's brain were consistent with her diagnosis of multiple sclerosis, see Dkt. No. 11 at 9, and did not reveal any abnormalities of the spine.  See, e.g., T. at 307-08.   Further, as the ALJ discussed, Dr. Gerber noted that plaintiff's April 2017 complaints of "some mild low back pain," were "likely" attributable to plaintiff exercising, which Dr. Gerber had recommended to remedy her significant weight gain. Id. at 676 (emphasis added); see id. at 18, 983.  Dr. Gerber noted that, in order to alleviate this mild low back pain, plaintiff was "scheduled to get a new pair of sneakers . . . and that [he and plaintiff] discussed switching from treadmill exercise to elliptical to decrease the impact."  Id.  However, as the evidence discussed above demonstrates, neither Dr. Gerber's treatment notes nor any of plaintiff's hospital records indicate any

16

significant limitation on plaintiff's ability to sit, stand, walk, lift, or carry; rather, the record evidence indicates that plaintiff remained active, engaging in exercise at the gym; and had full strength in her upper and lower extremities, including full grip strength; had good balance; and, at most, only minor issues with fleeting sensations of numbness and dizziness.  See id.  Thus, as the portions of Dr. Gerber's opinion concerning plaintiff's exertional limitations were not supported by substantial evidence in the record and, in fact, contradicted in large part by his own treatment notes, the record supports the ALJ's decision to afford his opinion less than controlling weight.  See Holloran, 362 F.3d at 32.

### 2. Plaintiff's Non-exertional Limitations

"A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments . . . ."  Sobolewski v. Apfel, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569a(a), (c)).  As an initial matter, the ALJ credited the portion of Dr. Gerber's opinion that stated that plaintiff had unlimited ability to engage in gross manipulation, and incorporated her slight sensations of numbness into the RFC determination that plaintiff can frequently engage in gross manipulation. See T. at 18, 975.  Plaintiff does not controvert this aspect of the opinion.  See Dkt. No. 9 at 8-9.  Further, to the extent that Dr. Gerber opined that plaintiff's ability to engage in fine manipulation was limited, the ALJ specifically observed that plaintiff "had mild manipulative problems such as when peeling potatoes" and, therefore, reasoned that "she can engage in [gross and fine manipulative functioning] actions frequently[,]" and that "[a]ny additional exertional or nonexertional limitation is not supported by the

record." Id. (emphasis added).  The ALJ cited Dr. Gerber's March 30, 2018 treatment note, which stated that "[plaintiff] does complain of some mild difficulty with fine coordination of the hands such as peeling potatoes and I have stressed the importance of stretching with her in daily physical activity." Id. at 983 (emphasis added); see id. at 19.  In addition, plaintiff's medical records indicate that plaintiff had intact" "[m]otor strength" in her upper extremities; strength in her lower extremities was "5/5 bilaterally"; and had "[f]ull ROM" in both her upper and lower extremities. Id. at 351, 355, 358, 361. In addition, Dr. Prezio opined that plaintiff's "hand and finger dexterity [was] intact[.]" Id. at 317.

Based on the foregoing, the Court concludes that a searching review of the record establishes that the ALJ's determination that plaintiff was limited to "frequent[]" fine manipulation is supported by substantial evidence and that the ALJ properly declined to afford controlling weight to the portions of Dr. Gerber's physical RFC assessment that attributed a greater limitation in this regard.  T. at 18; see May v. Comm'r of Soc. Sec., No. 17-CV-1347 (SR), 2019 WL 2717991, at *4 (W.D.N.Y. June 28, 2019) ("In light of . . . mild [to moderate] findings upon examination by the consulting examiner and the general absence of evidence in the administrative record suggesting any such limitation from treating sources or plaintiff himself, the Court finds that the ALJ's determination that [the] plaintiff was limited to frequent overhead reaching bilaterally is supported by substantial evidence.  Contrary to [the] plaintiff's argument, a moderate limitation is not inconsistent with a finding that an individual can engage in frequent, but not constant activity." (internal quotation marks and citations omitted)); see also Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's

conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

As a final matter, the Commissioner correctly posits that plaintiff has not pointed to any evidence indicating that she suffered from more serious impairments than accounted for in the ALJ's RFC.  See Dkt. No. 11 at 10.  For instance, aside from the foregoing, the only other nonexertional issue that is consistently discussed throughout plaintiff's medical records is plaintiff's complaints of migraine headaches.  See T. at 574, 569, 574.  However, Dr. Gerber's physical RFC assessment did not mention plaintiff's headaches.  See id. at 972-79.  Moreover, the medical evidence of record does not support a more limited RFC based thereon.  For instance, Dr. Gerber's November 16, 2016 treatment note indicates that plaintiff's multiple sclerosis was "clinically stable on Tysabri," and that Dr. Gerber "gave [plaintiff a] brief course of steroids . . . [to] quiet down her headaches and in fact it did."  T. at 574.  Dr. Gerber also noted that, as of November 2016, plaintiff had received "three doses of Tysabri with minimal headaches afterwards[,]" that he had increased her dose of ibuprofen from 400mg to 800 mg to combat her headaches, and that plaintiff was scheduled to visit "her GYN doctor regarding her . . . ovarian disease to see if there [wa]s any correlation with her headaches . . . ."  Id. (emphasis added).  Further, a February 2, 2017 AMC treatment note relating to her Tysabri infusion indicates that plaintiff informed a nurse that "she has had headaches, but not since she ha[d] been placed on a new oral contraception over the last 2 months, so she thinks that may have made a difference."  Id. at 569.  Thus, although plaintiff complained of "significant migraine headaches," id. at 18, the

record evidence establishes that plaintiff's headache symptoms were noted as being

"mild" and improved when she was placed on an oral contraceptive in December 2016.

See id. at 569, 574.

### VII. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that plaintiff's motion (Dkt. No. 9) is **DENIED** and it is further

**ORDERED**, that the Commissioner's motion (Dkt. No. 11) is **GRANTED**; and it is

further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-

Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 22, 2021
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge